UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Timothy W. Hazelton, Sr.


    v.                                            Civil No. 08-cv-419-JL


William Wrenn, Commissioner,
New Hampshire Department of
Corrections, et al.[1]


**O R D E R**


      Before the Court is Timothy Hazelton, who brings this action pursuant to 42 U.S.C. § 1983, alleging that his Eighth Amendment right not to be subject to cruel and unusual punishment, as well as his rights under the Americans with Disabilities Act, 42 U.S.C. 12132 et seq. ("ADA")[2], have been violated. The matter is before me for preliminary review to determine whether the

---

    [1]In addition to Wrenn, Hazelton names New Hampshire Department of Corrections Deputy Commissioner Christopher Kench and Northern New Hampshire Correctional Facility employees Cpl. Shane Mailhot, Librarian Angela Poulin, Corrections Officer ("C.O.") Overhaufer (First Name Unknown ("FNU")), C.O. FNU Lemieux, C.O. FNU Dube, Unit Manager Robert Thyng, C.O. FNU Westbury, Cpl. FNU MacFarland, and Warden Larry Blaisdell as defendants to this action.

    [2]Although Hazelton has not specifically alleged a claim under the ADA, I find that his allegations sufficiently state such a claim and I will therefore construe the complaint to include an ADA claim.

complaint states any claim upon which relief might be granted. See United States District Court District of New Hampshire Local Rule ("LR") 4.3(d)(2). As explained herein, I find that Hazelton has stated sufficient facts to assert claims for relief, and I direct that this action proceed against defendants at this time. I further find that Hazelton, by virtue of his official capacity suit against each of the defendants, and the urgent nature of his claims, has alleged a need for preliminary injunctive relief.

## Standard of Review

Under this Court's local rules, when an incarcerated plaintiff commences an action pro se and in forma pauperis, the magistrate judge is directed to conduct a preliminary review. LR 4.3(d)(2). In conducting the preliminary review, the Court construes pro se pleadings liberally, however inartfully pleaded. See Erickson v. Pardus, ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972) to construe pro se pleadings liberally in favor of the pro se party). "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." See

Castro v. United States, 540 U.S. 375, 381 (2003) (noting that courts may construe pro se pleadings so as to avoid inappropriately stringent rules and unnecessary dismissals of claims); Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997). All of the factual assertions made by a pro se plaintiff and inferences reasonably drawn therefrom must be accepted as true. See id. This review ensures that pro se pleadings are given fair and meaningful consideration.

## Background

Timothy Hazelton is a forty-six year old inmate at the Northern New Hampshire Correctional Facility ("NCF"), where he has been housed by the New Hampshire Department of Corrections ("NHDOC") since February 23, 2006. Hazelton was born with cerebral palsy. As a result, he has severe mobility problems and walks, with difficulty, with the use of crutches. Hazelton is also blind in his right eye and partially blind in his left eye. As a consequence of his medical issues, Hazelton has to urinate and defecate more frequently than the average person, and when he feels the urge to either urinate or defecate, he is not able to "hold it," but must get to a bathroom right away in order to avoid soiling his clothing.

When Hazelton arrived at NCF, he fully apprised medical personnel there of his medical issues, including his bathroom-related needs.  The medical staff issued him a "medical pass" which advises NCF staff of his medical needs, and entitles him to a waiver of certain prison policies and procedures, to the extent they interfere with his ability to use the bathroom as needed.  Specifically, the passes issued to Hazelton direct prison staff that he is to be allowed to use the bathroom when needed without terminating his activities or visitation when they are interrupted by his bathroom needs.  Hazelton was first issued a number of temporary passes, but on October 15, 2007, he was issued a permanent lifetime pass to enable him to use the bathrooms as necessary at NCF without termination of his activities or visits.

Hazelton alleges that the NCF staff members named as defendants to this action have chosen not to honor his medical pass.  Instead, defendants have denied his bathroom requests, or terminated his visits and activities if he has to use the bathroom during those events.  Hazelton has also been forced to travel across the entire facility to use the bathroom in his housing unit instead of being given access to closer inmate

bathrooms.  As a result, Hazelton claims that he has repeatedly been forced to urinate or defecate in his clothing as he has not been able to make it back to his housing unit in time to use the bathroom.

Hazelton has been forced to terminate visits with family members who had driven 2 ½ hours to see him in order to use the bathroom.  Hazelton has also been made to soil himself in front of his family members because he was not allowed to use an inmate bathroom near the visiting room.  Hazelton names Corrections Officers ("C.O.s") Lemieux, Dube, and Westbury as individual officers who denied him access to a bathroom during his visits, or who forced Hazelton to terminate his visits in order to use the bathroom at all.

On October 1, 2006, Hazelton filed a request asking the NCF nurse practitioner to insure that his medical pass stated that his visits were not to be terminated due to his bathroom use. The nurse responded that Hazelton had previously been denied access to a bathroom, or been made to choose to terminate his visit in order to use the bathroom, because there is only one officer on duty in the visit room, and if that officer is not

available to accompany Hazelton to the bathroom, then Hazelton will not be able to use the bathroom without waiting.

On February 23, 2008, Hazelton was in the NCF library to get copies of legal work from NCF librarian Angela Poulin. While he was in the library, Hazelton asked Poulin for access to the bathroom there. Poulin refused. Hazelton politely explained to Poulin that he had medical conditions that necessitated access to a bathroom, and a medical pass allowing that access. Poulin ignored Hazelton and called Cpl. Shane Mailhot. Mailhot took Hazelton into the hallway and questioned him as to why he was giving Poulin a hard time. Hazelton told Mailhot that he was not giving Poulin a hard time, but was politely explaining his situation to her. Mailhot forced Hazelton to return to his housing unit in order to use the bathroom rather than giving Hazelton access to a nearby bathroom.

On February 24, 2008, Hazelton filed a grievance with his Unit Manager, Robert Thyng, stating that while he was in the NCF chapel, he needed to use the bathroom during his church services. Hazelton asked an official at the chapel if someone could open the inmate bathroom near the chapel so that he would not have to return to his housing unit and miss the services. Cpl. McFarland

responded and Hazelton requested that he be allowed to use the bathroom, explaining his medical situation and medical pass to McFarland.  McFarland refused to open the bathroom, and instead told Hazelton to return to his housing unit.  On March 3, 2008, Thyng responded that the officers in the Education Department allow him to use the bathrooms at their earliest convenience, but that, unfortunately, due to their busy schedules, sometimes Hazelton would have to wait for a few minutes.

On April 7, 2008, Hazelton was in the chapel for a keyboarding lesson.  During the lesson, Hazelton advised Mailhot that he had to use the bathroom.  Mailhot said that Hazelton's need for the bathroom was ridiculous, that he would not be permitted to use the bathroom near the chapel, and that he would have to return to his housing unit to use the bathroom.  Hazelton returned to his housing unit to use the bathroom, and then asked C.O. Overhaufer to allow him to return to the chapel to complete his scheduled keyboarding lesson.  Overhaufer laughed at the request, stating "What? Do you think you are special and entitled to special privileges?"  Overhaufer refused to let Hazelton return to the chapel.  Both Mailhot and Overhaufer, Hazelton alleges, were well aware of his medical conditions and his

medical pass allowing him the frequent use of bathrooms without detriment to his activities or visitation.

On April 7, 2008, Hazelton again filed a grievance with Thyng, asking for assistance in resolving the ongoing issue of NCF staff not honoring his medical pass.  On April 11, 2008, Thyng responded: "I have already addressed this issue.  The Cpl. allows you to use the restroom when he is available."

On April 23, 2008, Hazelton filed a grievance with NCF Warden Larry Blaisdell, as he had been unable to resolve his problems with his grievance to Thyng.  Hazelton's grievance complained that the NCF staff was failing to honor Hazelton's medical pass.  On May 8, 2008, Blaisdell denied the grievance.

On May 16, 2008, Hazelton filed a final appeal of the denial of his grievance with NHDOC Commissioner William Wrenn.  Hazelton reiterated his complaints and stated that he had been unable to resolve these issues with staff, despite repeated efforts to do so.  Specifically, Hazelton complained that, despite his medical condition and his medical pass, NCF staff continued to send Hazelton to his housing unit to use the bathroom, rather than allowing him to use a closer inmate bathroom, and that this resulted in the termination of his activities and visitation.

Christopher Kench, Wrenn's assistant, responded on behalf of Wrenn. Kench's response was: "This has been policy and practice for some time now, and we believe that it will withstand discussion." This action followed.

## Discussion

I. Section 1983 Claims

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal constitutional or statutory law. See 42 U.S.C. § 1983[3]; City of Okla. City v. Tuttle, 471 U.S. 808, 829 (1985); Wilson v. Town of Mendon, 294 F.3d 1, 6 (1st Cir. 2002). In order for a defendant to be held liable under § 1983, his or her conduct must have caused the alleged constitutional or statutory deprivation. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978); Soto v. Flores, 103 F.3d 1056, 1061–62 (1st Cir. 1997). Here, Hazelton claims

---

[3] 42 U.S.C. § 1983 provides that:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

that defendant NCF and NHDOC employees are state actors, and that they violated his federal constitutional right not to be subjected to cruel and unusual punishment, as well as his rights under the ADA. Hazelton's action arises, therefore, under § 1983.

    A.    <u>Eighth Amendment Cruel and Unusual Punishment Claim</u>

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." <u>Helling v. McKinney</u>, 509 U.S. 25, 33 (1993); <u>see</u> <u>Giroux v. Somerset County</u>, 178 F.3d 28, 31 (1st Cir. 1999). Hazelton's claim that he was wrongfully denied access to necessary sanitary facilities implicates the Eighth Amendment's proscription against the imposition of cruel and unusual punishment.

The Supreme Court has adopted a two-part test for reviewing claims under the Eighth Amendment's cruel and unusual punishment clause. <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994); <u>Helling</u>, 509 U.S. at 25; <u>Hudson v. McMillian</u>, 503 U.S. 1, 7 (1992). "First, the deprivation alleged must be, objectively, 'sufficiently serious,' a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's

necessities.'" Farmer, 511 U.S. at 834 (internal citations to Wilson v. Seiter, 501 U.S. 294, 298 (1991), Hudson, 503 U.S. at 5, and Rhodes v. Chapman, 452 U.S. 337, 347 (1981) omitted).

To violate the Eighth Amendment prohibition against inhumane prison conditions, an inmate must allege more than "routine discomfort" associated with prison life. Hudson, 503 U.S. at 9 (internal citation omitted). Plaintiff instead must demonstrate that he has suffered from a deprivation of "'the minimal civilized measure of life's necessities.'" Wilson, 501 U.S. at 298 (quoting Rhodes, 452 U.S. at 347). "The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones." Helling, 509 U.S. at 31 (citing Rhodes, 452 U.S. at 349). The Eighth Amendment imposes duties on prison officials to ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates. See Farmer, 511 U.S. at 832–33; Hudson v. Palmer, 468 U.S. 517, 526–527 (1984); Helling, 509 U.S. at 31-32; Washington v. Harper, 494 U.S. 210, 225 (1990); Estelle, 429 U.S. at 103. Conditions of confinement which do not lead to deprivations of essential food, medical care, or sanitation do not amount to an Eighth Amendment violation. See

Williams v. McWilliams, 20 F.3d 465 (5th Cir. 1994) (citing Rhodes, 452 U.S. at 348).

To satisfy the second prong of an Eighth Amendment claim, a prisoner must allege that prison officials "have a 'sufficiently culpable state of mind.'  In prison-conditions cases, that state of mind is one of 'deliberate indifference' to inmate health or safety."  Farmer, 511 U.S. at 834 (internal citations omitted). Treating a disabled inmate without regard for "the basic concept of human dignity at the core of the Eighth Amendment," can suffice to create a constitutional violation.  Schmidt v. Odell, 64 F. Supp. 2d 1014, 1031 (D. Kan. 1999) (internal citations omitted).  This is particularly true where the challenged conditions of confinement "'shock the conscience,' are 'barbarous,' or 'result in a deprivation of the minimal civilized measures of life's necessities.'"  Boland v. Coughlin, 622 F. Supp. 736, 737 (E.D.N.Y. 1985) (citing Rhodes, 452 U.S. at 347)

Here, Hazelton has alleged a serious deprivation in the denial of sanitary facilities adequate to meet his needs created by his well-documented medical problems.  Hazelton further alleges that the defendants named here were aware of his medical situation and his need for quick access to a bathroom.  The

defendants were also aware that Hazelton had received a medical pass exempting him from the normal policies of the institution regarding bathroom use by inmates.  Despite this knowledge, Hazelton alleges, the defendants acted to deprive him of adequate access to toilet facilities, or to provide him with access to a bathroom in a way that either interrupted religious or educational activities he was engaged in, or visits with his family.  Additionally, Hazelton alleges that he was denied any modicum of human dignity when he was made to soil himself on the way to a distant bathroom because he was denied quick access to a nearby bathroom, or was made to soil himself in front of other people, including visiting family members, when he was refused the use of a bathroom.  These allegations are sufficient to allege an Eighth Amendment claim for cruel and unusual punishment.

    B.    <u>ADA Claim</u>

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be

subjected to discrimination by any such entity." 42 U.S.C. § 12132.

> Pursuant to the plain language of Title II, a plaintiff must establish: (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

Parker v. Universidad de P.R., 225 F.3d 1, 5 (1st Cir. 2000). Title II of the ADA applies to inmates in correctional facilities. See Pa. Dep't of Corrs. v. Yeskey, 524 U.S. 206, 209-10 (1998). "[P]risons provide inmates with many recreational 'activities,' medical 'services,' and educational and vocational 'programs,' all of which at least theoretically 'benefit' the prisoners (and any of which disabled prisoners could be 'excluded from participation in.')" Id. at 210.

Hazelton alleges that he has a disabling physical condition and that his disabilities have been acknowledged by the medical staff at NCF, who have provided him with medical passes that direct the prison staff to accommodate the needs created by his disability so that he may have access to his activities and visitors. Hazelton alleges that he is being denied access to appropriate sanitary facilities to accommodate needs that arise

out of his disabling conditions.  Accordingly, Hazelton alleges that he has been denied benefits, services, or programs because of his disability.  These allegations give rise to a cognizable claim under the ADA, and I will direct that the ADA claim be served on the defendants

III. <u>Individual and Official Capacity Suits – Request for Injunctive Relief</u>

Hazelton has sued the defendants in their official as well as individual capacities.  It is well-settled that the Eleventh Amendment bars damages suits against state entities and state agents working in their official capacities unless the state has expressly waived immunity, which has not been done by New Hampshire for actions brought under § 1983.  <u>See</u> <u>P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.</u>, 506 U.S. 139, 144 (1993) (absent waiver, neither a State nor agencies acting under its control may be subject to suit in federal court); <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 (1989) (holding that neither a state nor its officials acting in their official capacities are "persons" under § 1983).  Official capacity suits against officers of an agency are simply "another way of pleading an action against an entity of which an officer is an agent." <u>Monell</u>, 436 U.S. at 690 n. 55.  Accordingly, I construe the

damages claims raised in the complaint as claims against the defendants in their individual capacities.

As stated above, Hazelton, has named the defendants in their official as well as individual capacities.  As official capacity claims are only actionable against state defendants to the extent they seek declaratory or injunctive relief, construing the complaint liberally, I find that Hazelton seeks injunctive relief against the defendants as well.  "[I]nsofar as injunctive relief is sought, an error of law by state officers acting in their official capacities will not suffice to override the sovereign immunity of the State where the relief effectively is against it."  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 113 (1984); Asociacion de Subscripcion Conjunta del Seguro de Responsibilidad Obligatorio v. Galarza, 484 F.3d 1, 6 (1st Cir. 2007) (finding state employee defendant amenable to suit in his official capacity for injunctive and declaratory relief, but protected from damages in his personal capacity).  Due to the nature of the complaint here, and the immediacy of the alleged need for attention to this matter, I construe the request for injunctive relief as one for a preliminary injunction.

IV.  <u>Supervisory Liability</u>

"Supervisory liability under § 1983 cannot be predicated on a respondeat theory, but only on the basis of the supervisor's own acts or omissions."  <u>Aponte Matos v. Toledo Davila</u>, 135 F.3d 182, 192 (1st Cir. 1998) (internal citations omitted).  A supervisor must "either [be] a primary actor involved in, or a prime mover behind, the underlying violation."  <u>Camilo-Robles v. Zapata</u>, 175 F.3d 41, 43-44 (1st Cir. 1999).  There must be "an affirmative link, whether through direct participation or through conduct that amounts to condonation or tacit authorization" to the violation alleged.  <u>Id.</u> at 44.

Defendants Wrenn, Kench, Thyng, and Blaisdell each serve a supervisory function within the NHDOC and/or the NCF.  Although there is no supervisory liability in § 1983 actions based on a respondeat superior theory of liability, a defendant supervisor can be held liable based on the defendant's actual notice of facts sufficient to render the official responsible for reasonable inquiry into the complaint.  <u>See</u> <u>Feliciano v. Dubois</u>, 846 F. Supp. 1033, 1045 (D. Mass. 1994) (citing <u>Layne v. Vinzant</u>, 657 F.2d 468 (1st Cir. 1981)).  A supervisor also may be held liable for his own acts, or omissions, if they rise to the level

of reckless or callous indifference to the constitutional rights of others.  See Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 91-92 (1st Cir. 1994).  Finally, a supervisor may be held liable under § 1983 if he or she "formulates a policy or engages in a practice that leads to a civil rights violation committed by another."  Camilo-Robles v. Hoyos, 151 F.3d 1, 7 (1st Cir. 1998).

I find that defendants Wrenn, Kench, Thyng, and Blaisdell each knew of plaintiff's serious medical condition and the related condition regarding his bathroom use, and nevertheless denied him appropriate accommodations to his condition.  These supervisory defendants also make clear, in their responses to Hazelton's grievances, that not only are they aware of the problem, but they feel that permitting it to continue, and failing to take steps to remedy it, is consistent with policy that they created, or are engaged in enforcing.  The denials of the grievances, coupled with the supervisors' knowledge of Hazelton's circumstances, suffice to state claims against these individuals in their supervisory capacities.

## Conclusion

As I find that plaintiff has stated claims upon which relief may be granted, I order the complaint (document no. 1) be served

on defendants Wrenn, Kench, Blaisdell, Thyng, Poulin, Mailhot, MacFarland, Overhaufer, Lemieux, Dube, and Westbury. The Clerk's office is directed to serve the New Hampshire Office of the Attorney General (AG), as provided in the Agreement On Acceptance Of Service, copies of this order and the complaint (document no. 1). See LR 4.3(d)(2)(C). Within thirty days from receipt of these materials, the AG will submit to the court an Acceptance of Service notice specifying those defendants who have authorized the AG's office to receive service on their behalf. When the Acceptance of Service is filed, service will be deemed made on the last day of the thirty-day period.

As to those defendants who do not authorize the AG's office to receive service on their behalf or whom the AG declines to represent, the AG shall, within thirty days from receipt of the aforementioned materials, provide a separate list of the last known addresses of such defendants. The Clerk's office is instructed to complete service on these individuals by sending to them, by certified mail, return receipt requested, copies of these same documents.

Defendants are instructed to answer or otherwise plead within twenty days of acceptance of service.  See Fed. R. Civ. P. 12(a)(1)(A).

Plaintiff is instructed that all future pleadings, written motions, notices, or similar papers shall be served directly on the Defendants by delivering or mailing the materials to them or their attorneys, pursuant to Fed. R. Civ. P. 5(b).

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge

Date:   November 14, 2008

cc:     Timothy W. Hazelton, Sr., pro se